DAVID E. MASTAGNI, ESQ. (SBN 204244)
ISAAC STEVENS, ESQ. (SBN 251245)
**MASTAGNI HOLSTEDT**
*A Professional Corporation*
1912 I Street
Sacramento, California 95811-3151
Telephone: (916) 446-4692
Facsimile: (916) 447-4614
davidm@mastagni.com
istevens@mastagni.com

Attorneys for Plaintiffs
Ray Strong, et. al.

UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| RAY STRONG, et al., on behalf of himself and all similarly situated individuals,<br><br>                    Plaintiffs,<br><br>          vs.<br><br>C & H SUGAR COMPANY, INC.; AMERICAN SUGAR REFINING, INC.; and DOES 1-100 inclusive<br><br>                    Defendants. | Case No.: 3:17-cv-00480-RS<br><br>[CLASS ACTION & COLLECTIVE ACTION]<br><br>**PLAINTIFF'S NOTICE OF MOTION AND MOTION FOR CERTIFICATION OF CLASS AND COLLECTIVE ACTION AND CLASS REPRESENTATIVE; APPOINTMENT OF COLLECTIVE AND CLASS COUNSEL; FINAL APPROVAL OF SETTLEMENT**<br><br>Date: April 4, 2019<br>Time: 1:30 p.m.<br>Courtroom: 3, 17th Floor<br>Judge: Hon. Richard Seeborg |

TO ALL PARTIES AND THEIR ATTORNEY(S) OF RECORD:

NOTICE IS HEREBY GIVEN that on April 4, 2019 in Courtroom 3 of the above entitled Court, before the Honorable Richard Seeborg, Plaintiff Ray Strong moves the Court for final approval of the proposed class action settlement.

Plaintiff brings this motion on the grounds that the proposed settlement is within the range of reasonableness to be finally approved as fair, adequate, and reasonable in all respects. This motion is based on the Memorandum of Points and Authorities submitted herewith, the parties' Settlement Agreement, the Declarations of Isaac Stevens and Ace T. Tate filed herewith, the papers

1    filed in support of Plaintiff's motion for conditional certification and preliminary approval, and any

2    such further evidence and argument as the Court may consider at the hearing on Plaintiff's Motion.

3

4                                        Respectfully submitted,

5

6    Dated: March 21, 2019              **MASTAGNI HOLSTEDT, APC**

7                                       By: */s/ Isaac Stevens*
                                        DAVID E. MASTAGNI
8                                       ISAAC S. STEVENS
                                        Attorneys for Plaintiff
9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

1

2

3

# **TABLE OF CONTENTS**

I. INTRODUCTION ........................................................................................................ 8

II. PROCEDURAL HISTODY OF THE CASE ............................................................ 9

III. SUMMARY OF SETTLEMENT TERMS .............................................................. 11

IV. STATUS OF SETTLEMENT ADMINISTRATION ............................................. 13

V. DISCUSSION ............................................................................................................. 14

   I.   THE COURT SHOULD CERTIFY THE COLLECTIVE ACTION CLASS AS APPROPRIATE FOR THE PURPOSES OF THE PROPOSED SETTLEMENT ................... 14

   II.   THE COURT SHOULD CERTIFY PLAINTIFFS' DERIVATIVE STATE LAW CLAIMS AS CLASS CLAIMS UNDER RULE 23 ........................................................ 15

   A.   The California Sub-Classes Each Meet The Requirements Of Rule 23(a) ...................... 16
      1.   The California Class And Sub-Classes Are Sufficiently Numerous ............................ 16
      2.   The Claims Of The Rule 23 California Class And Sub-Classes Turn On Common Questions Of Law And Fact ....................................................................................... 17
      3.   Typicality ............................................................................................................... 18
      4.   Adequacy ............................................................................................................... 19

   B.   The Proposed California Class and Subclasses Satisfy Rule 23(b)(3) ...................... 20

   III.   PLAINTIFFS' COUNSEL SHOULD BE APPOINTED FLSA COLLECTIVE ACTION AND RULE 23 CALIFORNIA CLASS COUNSEL .................................................. 21

   IV.   THE PROPOSED SETTLEMENT MERITS  APPROVAL OF THE FLSA COLLECTIVE ACTION AND RULE 23 CALIFORNIA CLASS ACTION CLAIMS ........................................ 22

   A.   The Proposed Settlement Resolves Multiple Bona Fide Disputes Between The  Parties Arising Under The FLSA For The Relevant Claim Periods ...................................................... 22
      1.   A Bona Fide Dispute About How to Calculate the Regular Rate ................................ 22
      2.   The Parties Dispute The Application Of Offsets And Credits .................................... 24
      3.   The Parties Dispute Whether Defendants Acted In Good-Faith .................................. 25
      4.   The Parties Dispute The Applicable Limitations Period ............................................ 26

   B.   The Proposed Settlement Resolves Multiple Bona Fide Disputes Between The Parties Arising Under Rule 23 Claims For The Relevant Claim Periods ............................................... 26
      1.   The Parties Dispute the Scope and Extent to Which Defendants Would be Subject to Penal Liability Under the Private Attorney General Act .............................................. 26
      2.   The Parties Also Dispute Whether Plaintiff and California Class Members Have Been Injured for the Purposes of California Labor Code Section 226(e) ............................. 28
      3.   The Parties Also Dispute Whether Plaintiff and California Class Members That Have Separated From Employment Would be Entitled to Waiting Time Penalties ............... 29
      4.   The Parties Also Dispute Whether The UCL Applies to Plaintiff and California Class Members' FLSA Claims And Whether They Would be Entitled to Any Restitution ... 30

   C.   The Terms Of The Proposed Settlement Are Fair, Just, And Reasonable ...................... 31

1.   The Proposed Settlement Is Entitled to a Presumption of Fairness Because it Was Reached Through Arm's-Length, Non-Collusive, and Informed Negotiations ........... 31

2.   The Proposed Settlement Falls Within The Range of Possible Recovery .................... 33

3.   The Amount Of Discovery Conducted At This Stage Confirms The Parties Made An Informed Decision Prior To Entering Into The Proposed Settlement ......................... 34

4.   Plaintiffs Face Inherent Risks if Litigation Continues ................................................. 35

5.   The Experience And Views Of Class Counsel Weigh In Favor Of Settlement Approval 36

6.   There Is No Government Participant In This Litigation ............................................... 36

7.   The Scope Of The Release Provision In The Settlement Agreement Is Appropriate ... 37

8.   The Proposed Cost Of Settlement Administration Is Appropriate ............................... 37

D.   The Proposed Settlement Distribution Is Fair And Reasonable ...................................... 38

E.   The Class Received Adequate Notice ............................................................................... 39

F.   Settlement Class Members Have Acted Favorably ......................................................... 40

VI.   THE REQUESTED AWARD OF ATTORNEY FEES TO CLASS COUNSEL IS REASONABLE ........................................................................................................................ 40

A.   Class Counsel's Requested Attorney Fees and Costs Should be Granted as Fair and Reasonable ............................................................................................................................ 41

VII.   THE INCENTIVE AWARD TO PLAINTIFF STRONG IS REASONABLE .................... 43

VIII.   CY PRES AWARDEES .................................................................................................... 44

XI.   CLASS ACTION FAIRNESS ACT ................................................................................... 44

X.   CONCLUSION ................................................................................................................... 44

1

## <u>TABLE OF AUTHORITIES</u>

2

**California Cases**

*7-Eleven Owners for Fair Franchising v. Southland Corp.* (2001) 85 Cal.App.4th 1135 ........... 39

*Amaral v. Cintas Corp. No. 2* (2008) 163 Cal.App.4th 1157 ....................................................... 30

*Cortez v. Purolator Air Filtration Products Company* (2000) 23 Cal.4th 163 ............................ 30

*Diaz v. Grill Concepts Services, Inc.* (2018) 23 Cal.App.5th 859 ............................................... 30

*Kao v. Holiday* (2017) 12 Cal.App.5th 947 ................................................................................. 29

*Lafitte v. Robert Half. Intern. Co.,* 1 Cal.5th 480 (2016) .............................................................. 41

*Wershba v. Apple Computers, Inc.* (2001) 91 Cal.App.4th 224 ............................................. 32, 39

**Federal Cases**

*Acton v. City of Columbia* 436 F.3d 969 (8th Cir. 2006) ............................................................. 24

*Alberto v. GMRI, Inc.,* 252 F.R.D. 652 (E.D.Cal.2008 ............................................................... 43

*American Pipe and Construction Co. v. Utah,* 414 U.S. 538 (1974) ............................................ 39

*Balestrieri v. Menlo Park Fire District* 800 F.3d 1094 (9th Cir. 2015) ...................................... 24

*Bankston v. Illinois,* 60 F.3d 1249 (7th Cir.1995) ....................................................................... 26

*Bellinghausen v. Tractor Supply Co.,* 306 F.R.D. 245 (N.D. Cal. 2015) ............................... 35, 43

*Bothell v. Phase Metrics, Inc.* 299 F.3d 1120 (9th Cir. 2002) ..................................................... 26

*Brittmon v. Upreach, LLC* 285 F.Supp.3d 1033 (S.D. Ohio 2018) .............................................. 39

*Campbell v. Facebook, Inc.* 315 F.R.D. 250 (N.D. Cal. 2016) .............................................. 18, 19

*Carson v. Billings Police Dept.,* 470 F.3d 889 (9th Cir. 2006) ................................................... 42

*Chao v. A-One Medical Services, Inc.* 346 F.3d 908 (9th Cir. 2003) .......................................... 25

*Chavez v. City of Albuquerque* 630 F.3d 1300 (10th Cir. 2011) ................................................. 24

*Compare Fleming v. Covidien, Inc.,* ED CV-10-01487 RGK), (C.D. Cal., Aug. 12, 2011), 2011
    WL 7563047 ......................................................................................................................... 28

*Compare Sharp v. CGG Land (U.S.) Inc.* 840 F.3d 1211 (10th Cir. 2016) ................................. 23

*Consolidated Rail Corp. v. Town of Hyde Park,* 47 F.3d 473 (2d Cir.1995) ............................... 16

*Culley v. Lincare, Inc.* 236 F.Supp.3d 1184 (E.D. Cal. 2017) .................................................... 28

*Featsent v. City of Youngtown* 70 F.3d. 900 (6th Cir. 1995) ....................................................... 24

*Flores v. City of San Gabriel* 824 F.3d 890 (9th Cir. 2016) ....................................................... 23

*General Telephone Company of the Southwest v. Falcon* 457 U.S. 147 (1982) ........................... 18

*Hanlon v. Chrysler Corp.* 150 F.3d 1011 (9th Cir. 1998) ..................................................... 20, 21

*Harris v. Palm Springs Alpine Estates, Inc.,* 329 F.2d 909 (9th Cir. 1964) ............................... 16

*Hart v. City of Alameda (unpublished)*, Case No. C-0705845MMC, 2009 WL 1705612 (N.D. Cal.
    June 17, 2009) ....................................................................................................................... 23

*Khanna v. Intercon Sec. Sys., Inc.,* No. 2:09-CV-2214 KJM EFB, 2014 WL 1379861 (E.D. Cal.
    Apr. 8, 2014), ........................................................................................................................ 31

*Khanna v. Inter-Con Sec. Sys., Inc.,* No. CIV S-09-2214 KJM, 2013 WL 1193485 (E.D. Cal. Mar.
    22, 2013) ............................................................................................................................... 31

*Larsen v. Trader Joe's Co.,* 2014 WL 3404531 (N.D. Cal. Jul. 11, 2014) .................................. 36

*Levya v. Medline Industries, Inc.,* 716 F.3d 510 (9th Cir. 2013) ................................................ 21

*Lewis v. County of Colusa*, Case No. 2:16-cv-01745-VC, 2018 WL 1605754 (E.D. Cal. Apr. 3,
    2018) ..................................................................................................................................... 23

*Lienhart v. Dryvit Systems, Inc.* 255 F.3d 138 (4th Cir. 2001) ................................................... 15

*Lightbourn v. County of El Paso, Tex.,* 118 F.3d 421 (5th Cir. 1997) .................................... 17, 18

*Linney v. Cellular Alaska P'ship*, 151 F.3d 1234 (9th Cir. 1998) .............................................. 34

*Local 246 Util. Workers Union of Am. v. S. California Edison Co.*, 83 F.3d 292 (9th Cir. 1996) 25

*McKeen-Chaplin v. Franklin Am. Mortg. Co.*, No. C 10-5243 SBA, 2012 WL 6629608 (N.D. Cal. Dec. 19, 2012)................................................................................................................ 31

*Moreno v. Regions Bank*, 729 F.Supp.2d 1346 (M.D. Fla. 2010) .................................. 37

*Nen Thio v. Genji, LLC*, 14 F.Supp.3d 1324 (N.D. Cal. 2014).......................................... 22

*Newman v. Advanced Technology Innovation Corp.* 749 F.3d 33 (1st Cir. 2014) ...................... 23

*O'Brien v. Town of Agawam* 350 F.3d 279 (1st Cir. 2003) ...................................... 18, 24

*Officers for Justice v. Civil Service Com'n of City and County of San Francisco* 688 F.2d 615 (9th Cir. 1982)............................................................................................................ 32

*Ontiveros v. Zamora*, 303 F.R.D. 356 (E.D. Cal. 2014) ...................................... 34

*Roberts v. Marshalls of CA, LLC*, Case No. 13-cv-04731-MEJ, 2018 WL 510286.................. 36

*Robidoux v. Celani* 987 F.3d 931, (2d. Cir. 1993) ...................................... 16

*Rodriguez v. W. Publ'g Corp.*, 563 F.3d 948 (9th Cir. 2009) ...................................... 32

*Rodriguez v. West Publishing Corp.* 563 F.3d 948 (9th Cir. 2009)................................ 43

*Rosario v. Livaditis,* 963 F.2d 1013 (7th Cir.1992) ...................................... 17

*Roy v. County of Lexington, South Carolina* 141 F.3d 533 (4th Cir. 1998) ..................... 25

*Sandoval v. M1 Auto Collision Centers* 309 F.R.D. 549 (N.D. Cal. 2015) .................... 16

*Selk v. Pioneers Memorial Healthcare Dist.*, 159 F.Supp.3d 1164 (2016)..................... 41

*Slezak v. City of Palo Alto*, Case No. 16-CV-03224-LHK, 2017 WL 2688224 (N.D. Cal. June 22, 2017) ............................................................................................................ 32, 37

*Sorenson v. Concannon*, 893 F.Supp. 1469 (D. Or. 1994) ...................................... 17

*Staton v. Boeing*, 327 F.3d 938 (9th Cir.2003) ...................................... 18

*Victorino v. FCA US LLC* 322 F.R.D. 403 (S.D. Cal. 2017) ...................................... 21

*Vizcaino v. Microsoft Corp.*, 290 F.3d 1043 (9th Cir. 2002) ...................................... 41

*Wolin v. Jaguar Land Rover North America*, LLC 617 F.3d 1168 (9th Cir. 2010) .................... 21

*Zuniga v. Bernalillo County* 319 F.R.D. 640 (D. New Mexico 2016).......................... 15

**California Statutes**

Cal. Bus. & Prof. Code §17208 ............................................................................ 30

Cal. Lab. Code §210........................................................................................ 27

Cal. Lab. Code §225.5...................................................................................... 27

Cal. Lab. Code §226(e)(C)(3) ............................................................................ 29

Cal. Lab. Code §514........................................................................................ 25

Cal. Lab. Code §1174.5.................................................................................... 28

Cal. Lab. Code §2698...................................................................................... 26

Cal. Lab. Code §2699(e)(2) ........................................................................ 27, 34

Cal. Lab. Code §2699(f)(2).............................................................................. 27

**Federal Statutes**

29 U.S.C. § 216(b) .................................................................................... 25, 41

29 U.S.C. § 255(a) ........................................................................................ 26

Fed. R. Civ. P. 23 ........................................................................................ 16

Fed. R. Civ. P. 23(a)(3) ................................................................................ 18

Fed. R. Civ. P. 23(a)(4) ................................................................................ 19

Fed. R. Civ. P. 23(b)(3) ............................................................................ 20, 21

**Other Authorities**

DOL Opinion Letter FLSA 2009-19.................................................................... 24

IWC Wage Order 1 Section 3(H).................................................................... 25

**Regulations**

29 C.F.R. §§ 778.201(a) ........................................................................................................... 24

29 C.F.R. §§ 778.202(a) ........................................................................................................... 24

29 C.F.R. §§ 778.217(b)(4) ....................................................................................................... 23

# I

## INTRODUCTION

Plaintiff Ray Strong seeks final approval of a class settlement of this action brought on behalf of him and the class of all individuals employed by Defendants in non-exempt positions covered by the collective bargaining agreement between Sugar Workers Union No. 1, Seafarers International Union of N.A. AFL-CIO (SWU Local 1) and Defendants that worked beyond forty hours in a week and received any incentives as defined in the Settlement agreement at any time within the three year period prior to the date the action was filed or the effective date of any applicable tolling agreement.

On September 6, 2018, the Court preliminarily approved the parties' proposed settlement, conditionally certified the case as a collective action under 29 U.S.C. § 216(b), and preliminarily certified the case as a class action under Federal Rules of Civil Procedure Rule 23. Additionally, the Court appointed Rust Consulting to serve as the settlement administrator and authorized it to mail out notice and claim forms to the putative class members. Notice was subsequently provided to the class members by the Court-approved settlement administrator. The settlement administrator ultimately mailed notice packets to 438 class members, of which, only about 4% were returned as undeliverable, meaning notice reached approximately 96% of the class. Of the 438 packets mailed out, approximately 40% of the recipients returned claim forms. None of the recipients filed objections.

Having fulfilled the requirements of administering the Settlement set out in the Settlement Agreement, Plaintiff now asks the Court to certify this action as a collective action with respect to the claims alleged under the Fair Labor Standards Act ("FLSA") and as a class action with respect to the claims alleged under state law, grant final approval of the class action settlement of the above-titled action, direct distribution of the settlement proceeds to the Settlement Class Members who timely returned valid Claim Forms to the Settlement Administrator, and approve the award of attorney fees and costs, including claims administration fees and incentive awards.

///

///

## II

## PROCEDURAL HISTODY OF THE CASE

On March 2, 2016, Plaintiff's counsel (hereafter "Class Counsel") sent a demand on behalf of Ray Strong and over one hundred individuals employed by Defendants alleging they had violated the overtime provision of the FLSA. (Declaration of Ace T. Tate in Support of Plaintiff's Unopposed Motion for (1) Conditional Certification (2) Preliminary Approval Certifying Class; (3) Certification of Collective and Class Counsel; (5) Preliminary Approval of Settlement and Notice Thereof; (6) Setting Schedule for Final Approval of Settlement ("Tate Dec.")[1], ¶7.) Specifically, the demand alleged a uniform policy of exclusion of multiple items of remuneration from the regular rate that were provided by a collective bargaining agreement ("CBA") between Opt-In Plaintiffs' exclusive bargaining representative, SWU Local 1 and Defendants. (*Ibid.*) These remunerations included shift differentials, overtime facilitator payments, meal allowances, attendance incentives and an annual Christmas Award (collectively "Incentives"). While the CBA provided daily overtime and double-time (which is not required by the FLSA) Defendants only paid it at 1.5x the employee's base rate of pay even when though employees worked beyond forty hours in a week, regardless of the receipt of any Incentives. (*Ibid.*) Class Counsel's demand also alleged a derivative claim pursuant to California's Unfair Competition Law.

Additionally, Class Counsel sent notice to the California Labor and Workforce Development Agency ("LWDA") alleging additional derivative state law claims under the Private Attorney General Act ("PAGA") regarding the untimely payment of wages, unlawful withholding of wages, failure to timely pay all final wages when due as well as non-compliant wage statements. (Tate Dec., ¶8.) At the end of March 2016, the parties agreed to toll the statute of limitations for Opt-In Plaintiffs in an effort to resolve the claims made in the demand without litigation. (Tate Dec., ¶9.) This agreement was limited to the individuals identified in the agreement. Thus, the statute of limitations of Putative Plaintiffs who are or were covered by the CBA were not part of this agreement and their statute of limitations continued to run. (*Ibid.*) Defendants provided significant informal pre-litigation discovery to Class Counsel regarding the Opt-In Plaintiffs to determine the

---

[1] Docket No. 43-3, filed June 29, 2018.

nature, scope and extent of the alleged total liability. (*Ibid.*)

Unable to resolve the issues raised in the demand, on January 30, 2017, Plaintiff filed this action on behalf of himself and all similarly situated individuals, entitled *Ray Strong, et. al. v. C & H Sugar Company, Inc. and American Sugar Refining, Inc.*, Case No. 3:17-cv-00480-RS in the United States District Court for the Northern District of California ("the Action"). (Dkt. No. 1.) The action asserts claims on behalf of present and former non-exempt employees employed at Defendant's Crockett, California location covered by the CBA for: (1) Violation of the Fair Labor Standards Act ("FLSA") by under calculating the regular rate; (2) Failure to timely pay all wages when due in violation of California Labor Code § 204; (3) Unlawful withholding of wages in violation of California Labor Code §§ 221, 222 and 223, (4) Failure to timely pay final wages in violation of California Labor Code §§ 201 and 202; (5) Failure to maintain required records in violation of  California Labor Code § 1174 and IWC Wage Order 1-2001 § 7; (6) Damages and penalties for failure to furnish wage statements in compliance with California Labor Code § 226; (7) Penalties pursuant to California Private Attorney General Act pursuant to California Labor Code § 2698 *et. seq.*; (8) Violation of California Business and Professions Code §§ 17200 *et. seq.*, and (9) Injunctive and Declaratory Relief (hereafter collectively "Claims"). The Complaint proposed two separate classes: (1) an FLSA Collective Action class for the FLSA claims ("FLSA Collective Action"), and (2) a Rule 23 Class Action class for the derivative state-law claims ("Rule 23 California Class"). (Tate Dec., ¶10; Dkt. No. 1 ¶26.)

Pursuant to the Court's direction to the parties at the initial case management conference, the parties met and conferred with the purpose of streamlining the action through the preliminary class certification hearing. (Dkt. No. 30.) The parties agreed to engage in informal discovery and mediate before a third party in lieu of the conditional certification and preliminary class certification to avoid the administration of multiple notices to the potential settlement classes. (*Id.*) The parties also agreed to enter into a tolling agreement to cover the claims of individuals who not yet opted in during the pendency of this process. (Tate Dec., ¶12.) This tolling agreement was executed in October 2017. (*Ibid.*) During informal discovery, Defendants provided, and Class Counsel reviewed, comprehensive payroll and time-punch records related to the claims of Opt-In Plaintiffs.

Defendants maintain were not the joint employers of Opt-In Plaintiffs before and during the pendency of this Action. Class Counsel has conducted a thorough investigation into the facts of this action, including a review of relevant documents, and has diligently pursued an investigation of the claims of Opt-In Plaintiffs, Putative Plaintiffs and the Rule 23 California Class against Defendants. (Declaration of David E. Mastagni in Support of Plaintiff's Unopposed Motion for (1) Conditional Certification (2) Preliminary Approval Certifying Class; (3) Certification of Collective and Class Counsel; (5) Preliminary Approval of Settlement and Notice Thereof; (6) Setting Schedule for Final Approval of Settlement ("Mastagni Dec."), ¶ 11.)[2]

On January 31, 2018, the parties participated in a mediation before Timothy J. Long. (Mastagni Dec., ¶10.) Together with continuing discussions and negotiations thereafter, this Settlement was reached after arms-length negotiations by and among the parties. On September 6, 2018, the Court conditionally certified the case as a collective and class action, preliminarily approved the settlement agreement, and authorized the parties to send notice and claim forms to the putative class member. (Docket No. 49.)

### III

### SUMMARY OF SETTLEMENT TERMS

The parties' proposed settlement (attached hereto as Ex. A) resolves the claims of the Opt-In Plaintiffs and Putative Plaintiffs in this action for a gross settlement amount of $515,000 ("GSA"). The GSA separately compensates Opt-In Plaintiffs and Putative Plaintiffs for their damages, notice and administration and expenses thereof, attorney fees and costs and an incentive award to the named Plaintiff and proposed FLSA Collective Action and Rule 23 California Class Representative Ray Strong. Pending this Court's approval, the GSA would be allocated as follows:

(1) $260,000 shall be paid to the Opt-In Plaintiffs to resolve their FLSA collective action claims as well as their derivative state law claims ("Opt-In Plaintiff Settlement Amount") during the period from March 28, 2012 – June 28, 2018 ("Opt-In Plaintiff Claim Period"). $250,000 of the Opt-In Plaintiff settlement amount shall be apportioned to the FLSA claims of Opt-In Plaintiffs and $10,000 to their derivative state law claims. The Opt-In Plaintiff

---

[2] Docket No. 43-5, filed June 29, 2018.

Settlement Amount shall be non-reversionary. Each Opt-In Plaintiff shall receive a pro-rata portion of this allocation of the Opt-In Plaintiff settlement based on the total alleged liability as calculated by Class Counsel using the number of hours worked beyond FLSA threshold of forty (40) hours in a week and their receipt of Incentives during the Opt-In Plaintiff Collective Action Claim Period. The remaining portion of the Opt-In Plaintiff settlement apportioned to their derivative state law claims arising under FRCP 23 shall be apportioned based on the number of workweeks an Opt-In Plaintiff worked beyond the FLSA overtime threshold during the Opt-In Plaintiff Class Action Claim Period.

(2) A maximum of $85,000 shall be paid to the Putative Plaintiffs to resolve their FLSA collective action claims as well as their derivative state law claims ("Putative Plaintiff Settlement Amount") during the period from January 30, 2013 – June 28, 2018 ("Putative Plaintiff Claim Period"). $75,000 of the Putative Plaintiff settlement amount shall be apportioned to their FLSA claims and $10,000 to their derivative state law claims. Each Putative Plaintiff shall receive a pro-rata portion of this allocation of the Putative Plaintiff settlement based on the overtime hours they worked and their receipt of Incentives during the Putative Plaintiff Collective Action Claim Period as follows: the total number of overtime hours worked by all Putative Plaintiffs will be determined first. This number is then divided by 75,000 to determine the pro rata recovery percentage that each overtime hour represents out of the 75,000 total. The actual number of overtime hours worked by each Putative Plaintiff who submits a claim form will then determine their pro rata recovery of the whole. The remaining money is distributed back to the Putative Plaintiffs who submitted claim forms.

(3) $20,000 of the GSA shall be paid to the California Labor Workforce and Development Agency as penalties for Opt-In Plaintiffs' and Putative claims under PAGA.

(4) $125,000 shall be paid to Class Counsel, Mastagni Holstedt, APC for attorney fees and costs subject to court approval.

(5) $10,000 shall be paid to FLSA Collective Action and Rule 23 California Class Representative Ray Strong as an incentive award subject to court approval.

(6) $15,000 shall be paid to Rust Consulting ("Settlement Administrator") as estimated costs for claims administration. Defendant will pay any additional costs of the settlement administrator. Any additional administration costs shall be borne by Defendants and not come from the GSA.

In response to the Court's suggestion, the parties' revised their original settlement agreement with respect to the handling of unclaimed moneys allocated to the Opt-in and Putative Class Members. Under the final Settlement Agreement, any unclaimed money will be distributed on a pro rata basis to the people who submitted claim forms.

As part of the proposed settlement, Opt-In Plaintiffs and Putative Plaintiffs, in exchange for their share of the respective settlement amounts shall release and discharge Defendant from all Claims based on their respective claim period. This release shall be to fullest extent permitted by law.

Defendants deny any liability or wrongdoing of any kind associated with the claims alleged in this case. Defendants also contend, among other things, they complied with the FLSA, California state wage and hour laws, and the UCL. Further, they contend they are not the joint employers of the Opt-In Plaintiffs and Putative Plaintiffs for the purposes of the FLSA and the California Labor Code and IWC Wage Order 1. Plaintiff Strong believes he has filed a meritorious class action on behalf of himself and the individuals he seeks to represent based on alleged violations of the FLSA, California wage and hour laws, and the UCL against Defendants. The proposed settlement resolves these disputed issues to the satisfaction of the parties for the applicable claim periods set forth herein.

## IV

## STATUS OF SETTLEMENT ADMINISTRATION

Pursuant to this Court's Order, the Claims Administrator mailed Claim and Notice Forms to every settlement class member via first class mail on January 15, 2019. (Declaration of Abigail Schwartz for Rust Consulting, Inc. (the "Administrator Decl."), ¶ 15.)[3] These packets included a postage paid envelope, and advised Class members they could submit a claim form, exclusion

---

[3] Filed concurrently herewith.

form, objection, and/or dispute by February 14, 2019. (Administrator Decl., ¶ 15.)[4]

The Administrator sent out packets to 438 putative class members. (Administrator Decl., ¶ 15.) Zero objections were returned to the administrator. (Administrator Decl., ¶ 20.) 177 claim forms were submitted. (Administrator Decl., ¶ 18.) 28 exclusion forms were submitted. (*Id*. at 19.)

Per the Settlement Agreement, the administrator will receive $15,000 of the administration expense from the Settlement fund, while the remainder is to be paid by the Defendants. (*Id*. at ¶ 22.)

# V

# DISCUSSION

As discussed herein, the Court should certify this case as a collective and class action, and grant final approval to the parties' settlement. The settlement grants substantial relief to the class members. It was the result of arm's-length negotiations, and resolves several bona fide disputes between the parties. No objections were filed to the proposed settlement. The Court should approve it.

## I. THE COURT SHOULD CERTIFY THE COLLECTIVE ACTION CLASS AS APPROPRIATE FOR THE PURPOSES OF THE PROPOSED SETTLEMENT

Plaintiff brought this action as a collective action pursuant to 29 U.S.C. § 216(b) on behalf of himself and all other similarly situated individuals. (Dkt. No. 1, ¶11-14.) Plaintiff alleged Defendants caused him to work beyond the statutory overtime threshold and unlawfully excluded multiple items of remuneration from the regular rate including shift differentials, overtime facilitator payments, meal allowances, attendance incentives, and annual Christmas Awards that were provided by the CBA. (*Id.*, ¶¶36, 39, 40, 42-44.) These allegations present common questions of law and fact as to the other collective action members. (*Id.*, ¶19.) The parties agree for the purposes of the proposed settlement that the Plaintiff and all individuals employed by Defendants in non-exempt positions covered by the CBA that worked beyond forty hours in a week and

---

[4] Initially, this Court set October 12, 2018 as the deadline for sending notice to the putative class members. (Docket No. 52.) However, after notice was mailed, the parties discovered that the Defendants included non-class members in the list of putative plaintiffs to receive notice. As a result, the parties moved for, and the Court ordered, curative notice to be sent to the individuals incorrectly sent notice. (Docket No. 54.) In addition to authorizing the claims administrator to send curative notices to the incorrectly identified individuals, the Court moved the deadline for sending out new notices to the class members to January 15, 2019.

received any Incentives at any time with the three year period prior to the date of the complaint or the effective date of any applicable tolling agreement, are similarly situated to each other for the purposes of 29 U.S.C. § 216(b) ("FLSA Collective Action"). Further, the parties agreed for the purposes of the proposed settlement that the FLSA Collective Action class shall be divided into two subclasses defined as follows:

> (1) FLSA Collective Action Opt-In Plaintiff subclass shall consist of all Collective Action members that have already opted into this action
>
> (2) FLSA Collective Action Putative Plaintiff subclass shall consist of all Collective Action members that have not opted into this action.

Plaintiff Strong should be named representative of the Collective Action. As discussed below, in relation to his adequacy to serve as a class representative, Plaintiff Strong's claims are typical of the individuals he seeks to represent, and there are no conflicts that would prevent him from representing the collective action members in this case.

To ensure a complete resolution of the FLSA Collective Action members' claims, the Plaintiff seeks an order certifying this action as an FLSA collective action pursuant to 29 U.S.C. §§201, *et seq.*

## II.  THE COURT SHOULD CERTIFY PLAINTIFFS' DERIVATIVE STATE LAW CLAIMS AS CLASS CLAIMS UNDER RULE 23

In addition to certifying this case as an FLSA collective action, Plaintiff asks the Court to make appropriate findings and certify the Rule 23 California Class proposed in Plaintiff's Complaint as definite and ascertainable. (Dkt. No. 1, ¶26.) A district court has broad discretion whether to certify a class. (*Lienhart v. Dryvit Systems, Inc.* 255 F.3d 138, 146 (4th Cir. 2001).) Because of the res judicata effect a class judgment has on absent parties, a court may not simply accept the named parties' stipulation that class certification is appropriate, but must conduct its own independent Rule 23 analysis. (*Zuniga v. Bernalillo County* 319 F.R.D. 640, 660 (D. New Mexico 2016)(relying on *Amchem Prods., Inc. v. Windsor*, 521 U.S. at 620–22 (1997).)

Plaintiff seeks to certify a Rule 23 California Class composed of all individuals covered by the CBA that worked beyond forty hours in a week and received Incentives at any time during the Rule 23 California Class Period as defined in Plaintiff's Complaint. (Dkt. No. 1, ¶26.) The Rule

23 California Class comprises two sub-classes based on the differing statute of limitations related to the tolling agreement executed prior to the filing of this Action. (*Id.*) The subclasses shall be defined as follows:

(1) The California Opt-In Plaintiff Sub-Class shall be defined as all individuals who have opted into this action by filing a consent to join. The applicable claim period for the California Opt-In Sub-Class Claim Period shall be from March 28, 2012 – June 29, 2018.

(2) The California Putative Plaintiff Sub-Class shall be defined as all individuals who are members of the Collective Action Class that have not yet opted into the action. The applicable claim period for the California Opt-In Sub-Class Claim Period shall be from January 30, 2013 – June 29, 2018.

**A.      The California Sub-Classes Each Meet The Requirements Of Rule 23(a).**

The state law class and sub-classes, as proposed, independently meet all four prerequisites of Rule 23(a) necessary for class certification: numerosity, commonality, typicality, and adequacy of representation. (Fed. R. Civ. P. 23(a).)

**1.    The California Class And Sub-Classes Are Sufficiently Numerous**

Rule 23(a)(1) requires the proposed class be so numerous that joinder of all class members is impracticable. Plaintiff does not need to show that the number is so large that it would be *impossible* to join every class member. (*Harris v. Palm Springs Alpine Estates, Inc.*, 329 F.2d 909, 913-914 (9th Cir. 1964); See also *Sandoval v. M1 Auto Collision Centers* 309 F.R.D. 549, 562 (N.D. Cal. 2015)(certifying class of 63 individuals); *Robidoux v. Celani* 987 F.3d 931, 936, (2d. Cir. 1993)("Consolidating in a class action what could be over 100 individual suits serves judicial economy.") Each of the sub-classes are clearly large enough to make joinder impracticable. The California Opt-In Plaintiff Sub-Class as defined exceeds over 100 individuals. Further, the California Putative Plaintiff Sub-Class exceeded 160 individuals. (Tate Dec., ¶12.) Indeed, the parties ultimately identified over 400 class members. (Administrator Decl., ¶ 15.) Courts presume the numerosity requirement is met when a class exceeds 40 members. (*Consolidated Rail Corp. v. Town of Hyde Park,* 47 F.3d 473, 483 (2d Cir.1995).) Given that each

of the subclasses have over a hundred members each, there is no doubt each proposed subclass

satisfies Rule 23(a)(1)'s numerosity requirement.

### 2. The Claims Of The Rule 23 California Class And Sub-Classes Turn On Common Questions Of Law And Fact

Under Fed. R. Civ. P. 23(a)(2), the Plaintiff must show there is a question of law or fact common to the class. The commonality test is met when there is at least one issue, the resolution of which will affect all or a significant number of the putative class members. (*Lightbourn v. County of El Paso, Tex.*, 118 F.3d 421, 426 (5th Cir. 1997).) "A common nucleus of operative fact is usually enough to satisfy the commonality requirement of Rule 23(a)(2)." (*Rosario v. Livaditis,* 963 F.2d 1013, 1018 (7th Cir.1992); *Sorenson v. Concannon*, 893 F.Supp. 1469, 1479 (D. Or. 1994)(where system-wide procedures are at issue, commonality exists).)

Here, the requirement of a common question of law or fact is met. The proposed Rule 23 California Class and subclasses members' claims all stem from the same source: the allegation that the Defendants unlawfully excluded multiple items of remuneration provided by the CBA from the regular rate that resulted in the underpayment of legally owed overtime compensation. Defendants calculated Plaintiff Strong's regular rate in the same manner the rest of the members of the California Class. Questions of law and fact common to the California Class and both sub-classes include:

- Whether Defendants failed to timely pay wages in violation of California Labor Code § 204;

- Whether Defendants unlawfully withheld wages in violation of California Labor Code §§ 221, 222 and 223;

- Whether Defendants failed to timely pay final wages to class members who separated from employment from Defendants in violation of California Labor Code §§ 201 and 202 during the relevant time period;

- Whether Defendants failed to maintain required records in violation of California Labor Code § 1174 and IWC Wage Order 1-2001 § 7;

- Whether Defendants failed to furnish accurate wage statements that did not comply with

the requirements of California Labor §226(a);

- Whether Defendants furnished non-compliant wage statements that constituted an "injury" for the purposes of California Labor Code § 226(e) entitling them to damages and/or penalties;

- Whether, based on the foregoing, California Class members are entitled to penalties pursuant to PAGA (Cal. Lab. Code § 2698 *et. seq.*); and

- Whether, based on the based on the foregoing, Defendants violated California's Unfair Competition Law ("UCL")(Cal. Bus. & Prof. Code §§ 17200, *et.* seq.)

Plaintiff only has to establish one common question of law or fact to meet the low threshold set by Rule 23(a)(2). As set forth above, Plaintiff's showing far surpasses that requirement.

### 3.   Typicality

The named Plaintiff's claims are also typical of those of the California Class and subclasses he seeks to represent. (Fed. Rule Civ. Proc. 23(a)(3).) The test for typicality, like the test for commonality, is not demanding. (*Lightbourn*, *supra* 118 F.3d at 426.) Typicality exists if the named plaintiffs' claims are "reasonably coextensive" with those of absent class members. (*Staton v. Boeing*, 327 F.3d 938, 957 (9th Cir.2003).) To be considered typical for purposes of class certification, the named plaintiff need not have suffered an identical wrong. Rather, the class representative must be part of the class and possess the same interest and suffer the same injury as the class members. (*Campbell v. Facebook, Inc.* 315 F.R.D. 250, 262 (N.D. Cal. 2016)(relying on *General Telephone Company of the Southwest v. Falcon* 457 U.S. 147, 156 (1982).)

Plaintiff Strong's state law claims under the Labor Code and the UCL are typical of those of the California Sub-Classes because they all arise out of the same systemic reoccurring event - Defendants' alleged failure to include certain payments for the purposes of calculating overtime.

"Calculation of the correct 'regular rate' is the linchpin of the FLSA overtime requirement." (*O'Brien v. Town of Agawam* 350 F.3d 279, 294 (1st Cir. 2003).) Like the rest of the members of each of the Rule 23 California Class and subclasses, Plaintiff Strong and the putative class members he purports to represent regularly worked beyond 40 hours in each work week entitling him to overtime compensation pursuant to the FLSA. Plaintiff Strong and the

putative class members he purports to represent regularly earned payments pursuant to the CBA that allegedly were not included in each individual's respective regular rate for purposes of calculating overtime. Defendant calculated the regular rate in the same manner with respect to Plaintiff Strong as they did the other members of the California Class and subclasses. As such, Plaintiff Strong's claims are typical of his fellow California Class members.

### 4.    Adequacy

The proposed Rule 23 California Class Representative Plaintiff Strong has and will continue to "fairly and adequately protect the interests of the class." (Fed. R. Civ. P. 23(a)(4).) To satisfy constitutional due process concerns, unnamed class members must be afforded adequate representation before entry of a judgment which binds them. Legal adequacy is determined by resolution of two questions: (1) whether named plaintiffs and their counsel have any conflicts with class members; and (2) whether named plaintiffs and their counsel will prosecute the action vigorously on behalf of the class. Generally, representation will be found to be adequate when the attorneys representing the class are qualified and competent, and the class representatives are not disqualified by interests antagonistic to the remainder of the class. (*Campbell, supra* at 315 F.R.D. at 263.) Both elements are satisfied here.

First, Plaintiff has retained counsel who are qualified and experienced to litigate this action. The law firm of Mastagni Holstedt, APC has represented plaintiffs in numerous wage and hour and other employment class actions. (Mastagni Dec., ¶¶2-4.) Second, Plaintiff Strong has no interests antagonistic to the interests of the proposed Rule 23 California Class and sub-classes and FLSA Collective Action Class and sub-classes. Strong is not only a plaintiff in this Action, he is also a leader of SWU Local 1. (Declaration of Ray Strong in Support of Joint Motion for Preliminary Approval of Settlement ("Strong Dec."), ¶3.)[5] He has a bargaining interest in advocating for and protecting the interests of his association's members who are also members of the FLSA Collective Action Class and the Rule 23 California Class. As noted above, under the proposed settlement, Strong will receive an incentive award for his efforts on behalf of the FLSA Collective Action and the Rule 23 California Class. Other than this specific payment, which is less

---

[5] Docket No. 43-6, filed June 29, 2018.

than 2% of the GSA, all of the Rule 23 California Class members will be entitled to receive a portion of either the Opt-In Plaintiff Settlement Amount or Putative Plaintiff Settlement Amount apportioned to these claims based on the number of workweeks they worked above forty (40) hours during their respective claim period. This allocation methodology acknowledges the individual circumstances of each participant with respect to their dates of employment and hours worked.

Because the settlement interests of both classes are aligned, and each member of the subclasses will share in the proceeds based on their underlying overtime claims based on work weeks, there are no allocation issues that would result in conflict. (*Hanlon v. Chrysler Corp.* 150 F.3d 1011, 1020 (9th Cir. 1998).) Finally, any California Class member who wished to "opt out" of the proposed settlement was allowed to do so, and was provided ample notice of that right. Indeed, several people exercised this right. (*See* Administrator Decl., ¶ 19.) Therefore no conflict of interest exists between the named class representative and the California Class members. Accordingly, Plaintiff Strong is an adequate representative of the California Class because he shares in the same manner, pursuant to the same formula and in an equitable distribution as the class members he seeks to represent through the proposed settlement.

**B.      The Proposed California Class and Subclasses Satisfy Rule 23(b)(3).**

In addition, the Rule 23 California Class and sub-classes satisfy the requirements of Rule 23(b)(3): predominance of common issues and superiority of the class action device. Common issues of law or fact "predominate over any questions affecting only individual members." (Fed. R. Civ. P. 23(b)(3).) Defendants' calculation of the regular rate is equally applicable to each proposed Class member's claims and damages. The proposed Rule 23 California Class and sub-classes in this case are sufficiently cohesive to warrant adjudication by representation. (*Hanlon*, 150 F.3d at 1022.) The representative Plaintiff and all of the proposed Rule 23 California Class members seek overtime pay and related damages and penalties based on the alleged underpayment of overtime. Common questions about whether Defendants underpaid overtime based on an incorrect regular rate predominate over individual questions (of which there is none), and the Rule 23 California Class members' potential legal remedies are identical within each sub-class. Any variation in individual class

members' damages is plainly insufficient to defeat class certification. (*Levya v. Medline Industries, Inc.*, 716 F.3d 510, 513–14 (9th Cir. 2013).) Thus, the proposed Rule 23 California Class and sub-classes may be certified for settlement purposes.

The class action device proposed here "is superior to other available methods for the fair and efficient adjudication of the controversy." (Fed. R. Civ. P. 23(b)(3).) "[T]he purpose of the superiority requirement is to assure that the class action is the most efficient and effective means of resolving the controversy." (*Wolin v. Jaguar Land Rover North America, LLC* 617 F.3d 1168, 1175–76 (9th Cir. 2010).) This action allows all of the Rule 23 California Class members' claims to be fairly, adequately, and efficiently resolved to a degree that no other mechanism or forum would provide. As in *Hanlon*, the alternative methods of resolution are individual claims for a relatively small amount of damages. (*Hanlon, supra,* 150 F.3d at 1023.) These claims "would prove uneconomic for potential plaintiffs" because "litigation costs would dwarf potential recovery." (*Id.*) For this reason, a class action is the superior method of resolution. There are no issues of manageability under the proposed settlement that would preclude class certification. As discussed *infra*, the proposed plan of distribution and settlement process is efficient and manageable.

## III. PLAINTIFFS' COUNSEL SHOULD BE APPOINTED FLSA COLLECTIVE ACTION AND RULE 23 CALIFORNIA CLASS COUNSEL

Fed. R. Civ. P. 23(g) requires the Court to consider the following four factors when appointing class counsel: whether (1) counsel has investigated the class claims, (2) counsel is experienced in handling class actions and complex litigation, (3) counsel is knowledgeable regarding the applicable law, and (4) counsel will commit adequate resources to representing the class. (*Victorino v. FCA US LLC* 322 F.R.D. 403, 406 (S.D. Cal. 2017).) Plaintiff's counsel is well qualified and easily meets the standards of Rule 23(g), as set forth in the declarations of David E. Mastagni,[6] Isaac S. Stevens,[7] and Ace T. Tate.[8] Prior to and during this litigation, Class Counsel

---

[6] Mastagni Dec.

[7] Declaration of Isaac S. Stevens in Support of Plaintiff's Unopposed Motion for (1) Conditional Certification (2) Preliminary Approval Certifying Class; (3) Certification of Collective and Class Representative; (4) Appointment of Collective and Class Counsel; (5) Preliminary Approval of Settlement and Notice Thereof; (6) Setting Schedule for Final Approval of Settlement ("Stevens Dec."), Docket No. 43-4, filed June 29, 2018.

[8] Tate Dec.

conducted an extensive investigation of the class claims. (Mastagni Dec., ¶¶12-13.) In addition, Class Counsel is very experienced and knowledgeable regarding complex federal and state wage and hour class actions. (Mastagni Dec., ¶¶2-4.) Finally, Class Counsel has committed significant resources to representing the California Class, including over six thousand dollars in out-of-pocket expenses. (Mastagni Dec., ¶29.) Accordingly, appointment of Plaintiff's counsel as Collective Action and Class Counsel is appropriate.

## IV.   THE PROPOSED SETTLEMENT MERITS APPROVAL OF THE FLSA COLLECTIVE ACTION AND RULE 23 CALIFORNIA CLASS ACTION CLAIMS

The proposed settlement warrants approval under the FLSA and Rule 23 because it resolves bona fide disputes between the Parties. "If a settlement in an employee FLSA suit does reflect a reasonable compromise over issues, such as FLSA coverage or computation of back wages, that are actually in dispute[,] . . . the district court [may] approve the settlement in order to promote the policy of encouraging settlement of litigation." (*Nen Thio v. Genji, LLC*, 14 F.Supp.3d 1324, 1333 (N.D. Cal. 2014); *Lynn's Food Stores*, 679 F.2d at 1353 n.8 (requiring "settlement of a bona fide dispute between the Parties with respect to coverage or amount due under the [FLSA]").) The purpose of this analysis is to ensure that an employee does not waive claims for wages, overtime compensation, or liquidated damages when no actual dispute exists between the Parties. (*Ibid.*)

### A.   The Proposed Settlement Resolves Multiple Bona Fide Disputes Between The Parties Arising Under The FLSA For The Relevant Claim Periods

The Court should approve the proposed Settlement Agreement because it resolves several bona fide disputes relating to the proper calculation of overtime and extent of Defendants' alleged liability under the FLSA.

#### 1.   A Bona Fide Dispute About How to Calculate the Regular Rate

There are bona fide disputes over how the putative class members' regular rate should be calculated. For example, as to the Christmas Award the Parties dispute whether the payment is made for a holiday that would be excludable from the regular rate pursuant to 207(e)(2) or whether it functions as a retention bonus that must be included pursuant to 29 C.F.R. 778.211(c). (Tate Dec., ¶14.) The Christmas Award is an annual payment made on the first pay period in December. It is not tied to the number of hours actually worked by Collective Action members. Case law is scant and far from definitive on whether payments labeled as holiday pay are excludable from the

regular rate. Most have focused on the timing of the payments. (*Hart v. City of Alameda (unpublished)*, Case No. C-0705845MMC, 2009 WL 1705612 (N.D. Cal. June 17, 2009) employing a "due to" test and concluding biweekly holiday in lieu payments made pursuant to a collective bargaining agreement were not excludable from the regular rate; *See also Lewis v. County of Colusa*, Case No. 2:16-cv-01745-VC, 2018 WL 1605754 *2 (E.D. Cal. Apr. 3, 2018)(concluding that timing of payments to the occurrence of holidays was a "closer" question but ultimately determined they must be included in the regular rate). This circuit has not definitively ruled on this type of payment. As such, it is in dispute whether it is includable in the regular rate.

Likewise, there is a dispute over whether meal allowance payments should be included in the regular rate. Plaintiffs contends that, since these payments are paid as taxable wages related to specific hours of work (e.g. having to work two or more hours than originally scheduled), they are considered to be compensation for work pursuant to 29 C.F.R. 778.224. (Tate Dec., ¶15.) Compensation for services cannot be excluded under 29 U.S.C. § 207(e)(2). (*Flores v. City of San Gabriel* 824 F.3d 890, 898-900 (9th Cir. 2016).) Defendants argue these payments are akin to "supper money" which the DOL has determined is excludable from the regular rate as reimbursement because it is an expense incurred at the convenience of the employer. (29 CFR 778.217(b)(4) defining "supper money" as a reasonable amount given to an employee, who ordinarily works the day shift and can ordinarily return home for supper, to cover the cost of supper when he is requested by his employer to continue work during the evening hours. (*Ibid.*) Appellate courts are likewise split on this issue. (*See Newman v. Advanced Technology Innovation Corp.* 749 F.3d 33 (1st Cir. 2014)(concluding that per diem payments could not be excluded from the regular rate because they were tied to the number of hours worked in a week); *Compare Sharp v. CGG Land (U.S.) Inc.* 840 F.3d 1211 (10th Cir. 2016)(concluding that payments were excludable because they were not tied to the number of hours worked). As such, a bona fide dispute exists as to whether the meal allowances at issue are required to be included in the regular rate.

Another unresolved issue is whether attendance incentive payments should be included in the regular rate. (Tate Dec., ¶16.) The CBA provides a pool of money to employees based on non-use of sick leave. Defendant relies on the Sixth Circuit's decision in *Featsent v. City of Youngtown*

70 F.3d. 900, 905 (6th Cir. 1995) where it held a bonus provided by a collective bargaining agreement for the non-use of sick leave is excludable because the payments were unrelated to the employees' compensation for services and hours of service. However, there is authority supporting Plaintiff's position that such payments must be included in the regular rate because they induce employees to work more steadily. (DOL Opinion Letter FLSA 2009-19 p. 4; *Acton v. City of Columbia* 436 F.3d 969 (8th Cir. 2006); *Chavez v. City of Albuquerque* 630 F.3d 1300 (10th Cir. 2011).) The Ninth Circuit has not yet ruled on the issue of attendance incentives but has ruled that leave buybacks not tied to attendance were not includable in the regular rate. (*Balestrieri v. Menlo Park Fire District* 800 F.3d 1094 (9th Cir. 2015).) The court in *Baliestrieri* acknowledged the circuit divergence among *Featsent* and *Acton* and *Chavez* by describing the contrasting positions of these courts as "debatable" and concluding that "[t]here was no reason to assume that employers providing sick leave prefer that their employees not use it". (*Id.* at 1103.) Thus, a bona fide dispute exists as to whether Defendants were required to include the sick leave incentive in the regular rate.

While the law may be more definitive as to the overtime coordinator payments very few individuals received these payments. Further, the size of these payments are small. (Tate Dec., ¶17.) Thus, their effect on the total alleged liability is miniscule. While Plaintiffs strongly believe these payments are includable, no binding circuit authority has directly addressed these types of payments.

### 2. The Parties Dispute The Application Of Offsets And Credits

Perhaps the most significant dispute in this matter is whether Defendants are entitled to seek offsets and credits pursuant to 29 U.S.C. section 207(h)(2). This subsection allows an employer to offset and/or seek a credit towards its FLSA obligation for payments made in excess of what the statute requires. "The regulations specifically explain how to treat such mid-workweek contractual overtime payments under the Act: only the *premium portion* of the contractual overtime rate (that is, the amount in excess of the employee's regular rate) is deemed 'overtime' pay and may be offset against any statutory overtime liability in the same week." (*See* 29 C.F.R. §§ 778.201(a), 202(a), *O'Brien v. Town of Agawam* 350 F.3d 279, 289 (1st Cir. 2003).)

Under the CBA, Collective Action and California Class members are entitled to overtime at one and one-half times their hourly rate for all hours worked beyond eight hours in a day and double their hourly rate for all hours worked beyond twelve. The FLSA does not provide daily overtime or double time[9]. As such, Defendants are entitled to assert a credit for all overtime premiums (0.5) and double-time premiums (1.0) that were paid on all hours that were also not overtime hours as defined by the FLSA (e.g. above forty) for the alleged miscalculation of the regular rate on statutory overtime hours. Defendant retained an expert on the issue of damages, Bruce L. Ross & Company. Defendant's expert prepared a report for the mediation concluding that proper application of the credits resulted in a net liability of only $154.76. (Tate Dec., ¶18.) In stark contrast, Class Counsel acknowledged that the Defendants were entitled to credits pursuant to 29 U.S.C. § 207(h)(2) but contended that there remained significant liability, approximately $364,500.00 in overtime back pay and liquidated damages owed to the Opt-In Plaintiffs. Thus, the issue of credits pursuant to 29 U.S.C. § 207(h)(2) is a hotly disputed issue.

### 3. The Parties Dispute Whether Defendants Acted In Good-Faith

The parties also dispute whether the class members are entitled to liquidated damages. 29 U.S.C. section 216(b) provides that "an employer who violates the Act shall be liable for unpaid overtime compensation plus an additional equal amount as liquidated damages." (*Local 246 Util. Workers Union of Am. v. S. California Edison Co.*, 83 F.3d 292, 297 (9th Cir. 1996).) Courts have the discretion to deny an award of liquidated damages if the employer shows that it acted in subjective "good faith" and had objectively "reasonable grounds" for believing that its conduct did not violate the FLSA. (*Chao v. A-One Medical Services, Inc.* 346 F.3d 908, 920 (9th Cir. 2003).) Defendants argue that, because the CBA provides more generous overtime thresholds than what the FLSA requires, its liability is completely exhausted by credits it could assert pursuant to 29 U.S.C. § 207(h)(2) in most circumstances. (*Roy v. County of Lexington, South Carolina* 141 F.3d 533, 548, 549 (4th Cir. 1998)(affirming denial of liquidated damages based on advice of counsel that proved ultimately incorrect as well as the fact that the contract at issue compensated employees in a manner more generous than what the FLSA required in most instances).) If no additional back

---

[9] Collective Action and California Class members are not entitled to daily overtime or double-time under state law because they are covered by a collective bargaining agreement. See Cal. Lab. Code §514; IWC Wage Order 1 Section 3(H).

wages were owed, there could not be any award of liquidated damages.  If back pay was determined to be owed, this issue affects the total FLSA liability by 50%.  (Tate Dec., ¶19.) Therefore, this is also a disputed issue.

### 4.    The Parties Dispute The Applicable Limitations Period

Finally, there is a dispute as to the applicable statute of limitations. (Tate Dec., ¶20.) Generally, the FLSA has a two-year statute of limitations. (29 U.S.C. § 255(a).) However, if the violation of the FLSA is willful, the statute of limitations extends to three years. (*Id.*) The burden is on the employee(s) to show a willful violation. "Unlike good faith, the employee bears the burden of proving the willfulness of the employer's FLSA violations." (*Bankston v. Illinois,* 60 F.3d 1249, 1253 (7th Cir.1995).)

Plaintiff has asserted that Defendants' actions were willful. However, Defendants claim they acted in good faith because they made continued efforts to assess compliance with the FLSA despite the unclear state of the law with respect to most of the items of remuneration. (*Bothell v. Phase Metrics, Inc.* 299 F.3d 1120, 1130 (9th Cir. 2002) (concluding that a finding of good faith precludes a finding of willfulness).) Moreover, even if the statute of limitations was three years, if Defendants proved to be correct regarding the application of credits, liability would be next to nothing regardless of whether the court applied a two-year or a three-year statute of limitations.

All of these disputed issues affect the strength of FLSA Collective Action members' claims that would ultimately affect their monetary recovery if this matter proceeded to trial.

### B.    The Proposed Settlement Resolves Multiple Bona Fide Disputes Between The Parties Arising Under Rule 23 Claims For The Relevant Claim Periods

The Court should approve the proposed Settlement Agreement because it resolves several bona fide disputes relating to the proper calculation of overtime and extent of Defendants' alleged liability under the derivative state law claims.

### 1.    The Parties Dispute the Scope and Extent to Which Defendants Would be Subject to Penal Liability Under the Private Attorney General Act

Plaintiff also brought claims under the California Labor Code pursuant to the California Private Attorney General Act (Cal. Lab. Code §2698 *et. seq.* "PAGA"). Plaintiff asserted as a result of Defendants alleged under calculation of the regular rate, he along with the rest of the California Class members were not paid all wages earned outside the normal work period in a timely manner

as required by California Labor Code 204. (Dkt. No. 1 ¶72-79.) For this violation, PAGA sets forth a penalty structure of $100 per employee per pay period for each violation. (Cal. Lab. Code 210.) Any subsequent violation or any willful violation proscribes a $200 penalty per employee per pay period, plus 25% of the unlawfully withheld sum. (*Id.*) However, as set forth above, Defendants contend that if it were liable for the under calculation of the regular rate, after the application of offsets and credits there would be no underlying PAGA penalty liability for most of the Plaintiffs. Further, Defendants contend that if any underlying liability were found based on their methodology with respect to offsets and credits, the Court would significantly reduce such penalties in its discretion based on these circumstances because to do otherwise would be unjust, arbitrary, oppressive and confiscatory. (Cal. Lab. Code §2699(e)(2).) Likewise, the same dispute exists between the Parties for the allegation that Defendants failed to pay wages pursuant to a statute and/or contract that were unlawfully withheld pursuant to California Labor Code sections 221-223 as alleged by Plaintiff. (Dkt. No. 1 ¶80-86.) Further, the same penalty structure applies. (Cal. Lab. Code §225.5.) As such, Plaintiffs recovery of penalties under this PAGA claim is uncertain.

The parties also dispute the PAGA liability with respect to the allegation that Defendants issued non-compliant wage statements as a result of the underlying allegation of failing to properly calculate the regular rate. PAGA applies a penalty of $100 per employee per pay period for each non-compliant wage statement. (Cal. Lab. Code §2699(f)(2).) Any subsequent violation, the penalty rises to $200 penalty per employee per pay period. (*Id.*) Plaintiff contends Defendants' alleged systemic under calculation of the regular rate caused them to receive wage statements that did not accurately reflect gross wages earned and net wages earned as required by California Labor Code section 226(a) subsections (1) and (5).  However, Defendants contend the wage statements issued do comply with the statute because they did not under calculate the regular rate resulting in an under reporting on the wage statements furnished to California Class members. Further, Defendants also contend, any wages allegedly unpaid due to the under calculation of the regular rate and after the application of the offsets and credits are easily decipherable from the other items listed on the wage statements they provided as required by California Labor Code section 226(a). As such, Defendants contend that application of the penalties at face value for non-compliant wage

statements, if any, would be unjust, arbitrary, oppressive and confiscatory in light of the alleged underlying liability as they have calculated it and would compel the Court to reduce them in its discretion.

The parties also dispute whether Plaintiff can even bring a PAGA claim under California Labor Code 226.3. (Dkt. No. 1 ¶105.) Plaintiff alleged that the failure to provide compliant wage statements with respect to gross wages and net wages earned, while Defendants assert that Plaintiff failed to allege that he was not provided a wage statement, at any time during the claim period. California federal courts have come to conflicting conclusions whether a plaintiff must plead an employer's failure to furnish a wage statement or whether simply a non-compliant wage statement is sufficient to bring a PAGA penalty claim under section 226.3 for violation of section 226(a). (*See Culley v. Lincare, Inc.* 236 F.Supp.3d 1184, 1194 (E.D. Cal. 2017), *Compare Fleming v. Covidien, Inc.,* ED CV-10-01487 RGK), (C.D. Cal., Aug. 12, 2011), 2011 WL 7563047, p. *7.) Further, Defendants also contend that if section 226.3 did apply to Plaintiff's claims, any underpayment that resulted in non-compliant wage statements based on its miniscule wage liability calculation was an inadvertent mistake justifying reduction of any penalties assessed in the discretion of the Court.

Finally, Plaintiff and California Class members' alleged Defendants failed to maintain accurate records is miniscule with respect to the allegation of failing to maintain and keep accurate records required by the applicable wage order. (Dkt. No. 1, ¶93-100.) The maximum penalty is $500 which the Court would also be empowered to reduce in its discretion under PAGA. (Cal. Lab. Code §1174.5.)

Taking all of these issues into account with respect to PAGA liability, if Plaintiff proceeded to trial and if any underlying FLSA liability were to be found, there would be a significant risk any PAGA penalties assessed would be severely reduced by the Court.

### 2. The Parties Also Dispute Whether Plaintiff and California Class Members Have Been Injured for the Purposes of California Labor Code Section 226(e)

Additionally, Plaintiff alleged on behalf of himself and California Class members a separate claim under 226(e) for damages/penalties for Defendants failure to issue wage statements that

complied with the statute. (Dkt. No. 1 ¶104.) Specifically, Plaintiff contends the wage statements issued did not reflect all gross wages earned and net wages earned. Subsection (e) requires a plaintiff to demonstrate a statutorily defined injury if an employer furnishes a wage statement that does not comply with subsection (a). (Cal. Lab. Code 226(e)(B)(i) – (iv).) Defendants contend Plaintiff and the putative class members have not been injured as defined by the statute because any missing information can easily be determined from the wage statements themselves. ("For purposes of this paragraph, "promptly and easily determine" means a reasonable person would be able to readily ascertain the information without reference to other documents or information." Cal. Lab. Code 226(e)(C).) However, Plaintiff contends Defendants' failure to provide the accurate amount of net wages earned caused them to refer to documents other than the wage statement regarding their tax obligations such as a W-2. Class Counsel believes the issue of whether reference to tax documents or other related information constitutes an injury for the purposes of a claim under 226(e) is a matter of first impression. Moreover, Defendants also contend that any inability to decipher net wages earned from the wage statement alone was an inadvertent mistake in light of the fact that the CBA typically provides greater compensation than what the FLSA requires and they calculated such miniscule underlying wage liability. (Cal. Lab. Code §226(e)(C)(3).)  As such, the parties dispute whether there is any liability under 226(e), let alone the amount thereof.

### 3. The Parties Also Dispute Whether Plaintiff and California Class Members That Have Separated From Employment Would be Entitled to Waiting Time Penalties

Plaintiff also brought a waiting time penalty claim on behalf of all California Class members pursuant to California Labor Code section 203. (Dkt. No. 1 ¶87-92.)  California Labor Code section 203 proscribes a penalty of an employee's average daily wage up to thirty days when an employer willfully fails to timely pay final wages at separation in accordance with California Labor Code sections 201 or 202. Willful means that the employer intentionally failed or refused to perform an act which was required to be done. (*Kao v. Holiday* (2017) 12 Cal.App.5th 947, 963.)  Plaintiff and California Class members contend they are entitled to waiting time penalties based on the allegation that Defendants systematically under calculated the regular rate resulting in underpayment of

legally owed wages that were not paid at the time of separation from employment with Defendants during the relevant time period.

Defendants contend a good faith dispute exists whether any wages are actually owed with respect to the unclear state of the law regarding the calculation of the regular rate as well as the application of offsets and credits alleviating them from any waiting time penalty liability. (*See Amaral v. Cintas Corp. No. 2* (2008) 163 Cal.App.4th 1157, 1202 (Employer avoided waiting time penalties for failing to tender all final wages because legal obligations imposed by living wage local ordinance were unclear.) Further, Defendants contend that even if it were determined that back pay would be owed, a good faith dispute can be found even if such defense is ultimately unsuccessful. (*Diaz v. Grill Concepts Services, Inc.* (2018) 23 Cal.App.5th 859.) If this matter proceeded to trial, even if liability were established under the FLSA, there would be no guarantee that waiting time penalties would be awarded to those class members who separated from employment.

### 4. The Parties Also Dispute Whether The UCL Applies to Plaintiff and California Class Members' FLSA Claims And Whether They Would be Entitled to Any Restitution

Finally, Plaintiff also brought a claim on behalf of himself and California Class members pursuant to the UCL which has a four-year statute of limitations. (Dkt. No. 1 ¶120-123; Cal. Bus. & Prof. Code §17208.) Under the UCL, a trial court has broad equitable power to award restitution after considering "the equities on both sides of a dispute." (*Cortez v. Purolator Air Filtration Products Company* (2000) 23 Cal.4th 163, 180). Plaintiff contends he is entitled to restitution in the form of back pay for the under calculation of the regular rate based on the UCL's statute of limitations not covered by their respective FLSA claim accounting for the Parties tolling agreements or filing date of this action, whichever is earlier. Defendants contend as set forth above, based on the disputes with respect to the calculation of the regular rate as well offsets and credits, the amount of back pay owed, if any would be miniscule. Thus, liability under the UCL is disputed as well as the amount of any restitution owed thereon.

Based on the foregoing, it is respectfully submitted by the proposed settlement resolves several bona fide disputes that all necessarily affect the existence and extent of Defendants' alleged liability during the relevant claim periods.

1

2

3

4

5

6

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

**C.**     **The Terms Of The Proposed Settlement Are Fair, Just, And Reasonable.**

The proposed settlement warrants approval under the FLSA and Rule 23 because it is fair, just, and reasonable. Once it is established that there is a bona fide dispute, courts often apply the Rule 23 factors for assessing proposed class action settlements when evaluating the fairness of an FLSA settlement, while recognizing some of those factors do not apply because of the inherent differences between class actions and FLSA actions. (*Khanna v. Inter-Con Sec. Sys., Inc.*, No. CIV S-09-2214 KJM, 2013 WL 1193485, at *2 (E.D. Cal. Mar. 22, 2013).) Courts in this circuit have balanced factors such as:

> "the strength of the plaintiffs' case; the risk, expense, complexity, and likely duration of further litigation; the risk of maintaining class action status throughout the trial; the amount offered in settlement; the extent of discovery completed and the stage of the proceedings; the experience and views of counsel; the presence of a governmental participant; and the reaction of the class members to the proposed settlement."

(*Khanna v. Intercon Sec. Sys., Inc*., No. 2:09-CV-2214 KJM EFB, 2014 WL 1379861, at *6 (E.D. Cal. Apr. 8, 2014), order corrected, No. 2:09-CV-2214 KJM EFB, 2015 WL 925707 (E.D. Cal. Mar. 3, 2015).) With this approach, a "district court must ultimately be satisfied that the settlement's overall effect is to vindicate, rather than frustrate, the purposes of the FLSA." (*Id.*) Settlements that reflect a fair and reasonable compromise of issues that are actually in dispute may be approved to promote the efficiency of encouraging settlement of litigation. (*McKeen-Chaplin v. Franklin Am. Mortg. Co.*, No. C 10-5243 SBA, 2012 WL 6629608, at *2 (N.D. Cal. Dec. 19, 2012).)

The parties' proposed settlement agreement was reached through a non-collusive process that produced terms that are fair, just and reasonable. Indeed, the parties worked together to revise the initial settlement agreement to incorporate the Court's suggestions at the preliminary approval hearing to ensure the terms of the agreement were fair. As such, the Court should approve it.

**1.    The Proposed Settlement Is Entitled to a Presumption of Fairness Because it Was Reached Through Arm's-Length, Non-Collusive, and Informed Negotiations**

1    While the proponent of a settlement as the burden of showing it is fair and reasonable,

2  courts generally recognize a presumption of fairness where the settlement agreement is the result

3  of arm's-length bargaining. (*Wershba v. Apple Computers, Inc.* (2001) 91 Cal.App.4th 224, 245.)

4  "This circuit has long deferred to the private consensual decision of the parties." (*Rodriguez v. W.*

5  *Publ'g Corp.*, 563 F.3d 948, 965 (9th Cir. 2009).) A court's intrusion upon what is otherwise a

6  private consensual agreement negotiated between the parties to a lawsuit must be limited to the

7  extent necessary to reach a reasoned conclusion that judgment that the agreement is not the product

8  of fraud or overreaching by, or collusion between, the negotiating parties, and that the settlement,

9  taken as a whole, is fair, reasonable and adequate to all concerned. (*Officers for Justice v. Civil*

10  *Service Com'n of City and County of San Francisco* 688 F.2d 615, 625 (9th Cir. 1982).)  The

11  proposed settlement is the non-collusive product of hard-fought litigation.

12    The proposed settlement resulted only after extensive, arms-length settlement negotiations

13  that were conducted after rigorous discovery and review of time and payroll records regarding the

14  merits and damages of the disputed claims under the supervision of experienced mediator Timothy

15  Long. (Mastagni Dec., ¶¶11-14.)

16    "The likelihood of fraud or collusion is low . . . [when] the Settlement was reached through

17  arm's-length negotiations, facilitated by an impartial mediator." (*Slezak v. City of Palo Alto*, Case

18  No. 16-CV-03224-LHK, 2017 WL 2688224, at *5, (N.D. Cal. June 22, 2017).) Timothy Long was

19  actively involved in the negotiation of the parties' proposed settlement and significantly

20  contributed to achieving this global accord. There is no evidence of fraud, collusion, or self-

21  interest.

22    Additionally, the parties changed the terms relating to the distribution of unclaimed funds

23  in response to a suggestion the Court made at the preliminary approval hearing in this case. At the

24  hearing, the Court suggested any unclaimed funds be distributed back to the class members who

25  filed claim forms, on a pro rata basis.  In response to this request, the parties revised the Settlement

26  to do just that. (*See* Exh. A, pp. 2-3.)

27

28

As a result of all the work they performed, Class counsel firmly believes the proposed settlement represents a very favorable resolution of the claims in this case. Accordingly, this factor also weighs in favor of approval.

### 2.   The Proposed Settlement Falls Within The Range of Possible Recovery

Under the terms of the Settlement Agreement, Defendants will pay Collective Action and California Class members a total sum of $345,000.00 to resolve their claims under the FLSA and their derivative claims arising under the Labor Code and the UCL. This amount was reached based on Class Counsel's review of the discovery and their calculations which assumed they would prevail on all issues balanced against Defendants' position that any liability, if it existed, was almost completely exhausted by offsets and credits which would eliminate any liability for derivative state law claims. The parties believe the two settlement allocations are consistent with and within the range of total potential recovery if this matter proceeded to trial when accounting for the differing statute of limitations between the Opt-In Plaintiffs and the Putative Plaintiffs. (Tate Dec., ¶¶27, 28.)

Plaintiff's claim that four items of remuneration were unlawfully excluded from the regular rate remains unclear and, depending on how a court would rule, would create varying degrees of potential liability even before considering the additional issues that affect the actual individual recovery. Of significant impact, as discussed above, the Parties dispute the application of credits and offsets pursuant to 29 U.S.C. section 207(h)(2) which potentially could eliminate almost all liability.

The settlement provides Plaintiff and the class members prompt, certain, and favorable resolution of this issue for their respective claim periods. Absent this compromise, the dispute over the application of credits under the FLSA could reduce or even eliminate Plaintiff's recovery if the Court were to resolve this issue in Defendants' favor. Damages could be further reduced if a two-year rather than a three-year statute of limitations could apply, or if liquidated damages were not awarded by the Court. These issues significantly affect the total liability regardless of the offset and credit methodology applied. A denial of liquidated damages alone would reduce the range of Plaintiffs' recovery by 50%. (Tate Dec., ¶19.) Without a three-year statute of limitations, the range

of Plaintiffs' recovery would be reduced by about 33%. (Tate Dec., ¶20.) Finally, with respect to PAGA, even though the statute provides significant penalties, these can be reduced in the discretion of the court if based on the facts and circumstances of the particular case, to do otherwise would result in an award that is unjust, arbitrary and oppressive, or confiscatory. (Cal. Lab. Code §2699(e)(2).)

The proposed settlement affords the class members prompt, substantial relief, while avoiding significant legal and factual hurdles that otherwise may have prevented the Plaintiff from obtaining as favorable a recovery. While Class Counsel believes the collective action and class claims are meritorious, they are experienced and realistic, and understand that the resolution of the foregoing and other key issues, the outcome of a trial, and the outcome of any appeals that may follow are inherently uncertain in terms of both outcome and duration. Accordingly, this factor weighs in favor of approval of the proposed settlement because the interests of the class are better served by settlement than the attendant risks of further litigation.

### 3. The Amount Of Discovery Conducted At This Stage Confirms The Parties Made An Informed Decision Prior To Entering Into The Proposed Settlement

As noted above, Class Counsel vigorously investigated the claims asserted against Defendants. Courts assess the stage of the proceedings and the amount of discovery completed to ensure that parties have an adequate appreciation of the merits of the case before reaching a settlement. (*See Ontiveros v. Zamora*, 303 F.R.D. 356, 371 (E.D. Cal. 2014) ("A settlement that occurs in an advanced stage of the proceedings indicates that the parties carefully investigated the claims before reaching a resolution.").) As long as the parties have "sufficient information to make an informed decision about settlement," this factor will weigh in favor of approval. (*Linney v. Cellular Alaska P'ship*, 151 F.3d 1234, 1239 (9th Cir. 1998).) Here, Class Counsel have sufficient information to make an informed decision regarding settlement. Specifically, Class Counsel received significant informal discovery before and after the action was filed (i.e., time and payroll records), essentially all that was needed to form an adequate appreciation of the merits of the disputed issues and calculating the potential liability thereon before reaching the proposed

settlement. (Mastagni Dec. ¶¶11, 12.) Accordingly, this factor also weighs in favor of preliminary approval of the proposed settlement.

### 4.  Plaintiffs Face Inherent Risks if Litigation Continues

To assess the fairness, adequacy, and reasonableness of a class action settlement, the Court must weigh the immediacy and certainty of substantial settlement proceeds against the risks inherent in continued litigation. Settlement is favored where "there is a significant risk that litigation might result in a lesser recover[y] for the class or no recovery at all." (*Bellinghausen v. Tractor Supply Co.*, 306 F.R.D. 245, 255 (N.D. Cal. 2015).) This factor supports granting final approval for the settlement.

As discussed in greater detail above, liability is not certain, and there are multiple variables that could impact the calculation of damages in this case if any of the disputed items were determined to be required to be included in the regular rate. For example, a ruling that the Christmas Award is not includable in the regular would completely eliminate damages based on the Defendants' exclusion of Christmas award payments. The same is true with respect to each of the other pay items. Likewise, the Defendants have asserted other defenses that could completely eliminate or significantly reduce the Plaintiff's damages, including defenses based on the applicable statute of limitations, and the application of offsets and credits. These concerns pose a risk to Plaintiffs that could eliminate or reduce their individual recovery.

Defendants' counsel, Epstein Becker, is a well-respected firm with substantial experience litigating class action wage and hour disputes.

In addition, a class-wide trial would likely last several weeks at minimum, and involve party, class-member, expert and percipient witness testimony. As with all trials, there is considerable risk for either party. If Plaintiff was to succeed in certifying the class, keeping the case certified and prevailing at a class-action trial, in a case of this magnitude, the resulting money judgment would likely be subject to many rounds of appeals, where, again, both sides would face considerable risk. The class members still would not have yet received any money during the appeal process, and Class Counsel could spend years defending its trial court judgment in possibly several rounds of appeal. When presented with a six-figure settlement that will benefit a large

group of individuals in the very near future, the risk of an unfavorable judgment after potentially years of litigation, must be candidly recognized and evaluated. Accordingly, this factor also weighs in favor of approval of settlement.

### 5. The Experience And Views Of Class Counsel Weigh In Favor Of Settlement Approval

In determining whether a settlement is fair and reasonable, "[t]he opinions of counsel should be given considerable weight both because of counsel's familiarity with th[e] litigation and previous experience with cases." (*Larsen v. Trader Joe's Co.*, 2014 WL 3404531, *5 (N.D. Cal. Jul. 11, 2014).) Here, Class Counsel David Mastagni asserted the terms of the settlement agreement are fair and reasonable, and that the settlement amount is within the possible range that Plaintiffs could expect to recover if this matter were to proceed to trial. (Mastagni Dec., ¶13.) David Mastagni has years of experience litigating FLSA and state wages and hour claims, settled them and obtained court approval of those settlements. (Mastagni Dec., ¶¶2-4.) As such, his evaluation of the case is reliable. Accordingly, this factor weighs in favor of approving the proposed settlement.

### 6. There Is No Government Participant In This Litigation

There is no government participant in this action. However, the proposed settlement provides for the payment of $20,000.00 to the LWDA. This approximates the total amount that would be due on any penalties that would be assessed by the Court pursuant to PAGA for the Opt-In Plaintiffs and Putative Plaintiffs. This amount represents approximately 3.9% of the total settlement amount and is reasonable. (*See Roberts v. Marshalls of CA, LLC*, Case No. 13-cv-04731-MEJ, 2018 WL 510286 (approving payment to LWDA that was less than 1% of the total settlement amount) *See also Cotter v. Lyft* 193 F.Supp.3d 1030, 1037 (N.D. Cal. 2016)(court approving settlement where PAGA penalty portion represented only 3.7% of total settlement based unclear legal obligations as well as court's discretion to reduce penalties based on Cal. Lab. Code § 2699(e)(2))   As such, this factor weighs in favor of preliminary approval of the proposed settlement.

### 7. The Scope Of The Release Provision In The Settlement Agreement Is Appropriate

The scope of the release of claims in the proposed settlement agreement is appropriate.

"A FLSA release should not go beyond the specific FLSA claims at issue in the lawsuit itself." (*Slezak*, 2017 WL 2688224, at *5.) Expansive release of claims would allow employers to unfairly extract valuable concessions from employees using wages that they are guaranteed by statute. (*See Moreno v. Regions Bank*, 729 F.Supp.2d 1346, 1351 (M.D. Fla. 2010) ("An employee who executes a broad release effectively gambles, exchanging unknown rights for a few hundred or a few thousand dollars to which he is otherwise unconditionally entitled.").)

Here, the release is limited to the claims alleged in the Complaint. (See Ex. A, Paragraph 11.) While this release extends to all claims known and unknown (Ex. A, Paragraph 12), this is a common provision is settlement agreements and the Parties agree that such broad language only covers those claims related to those raised in the Complaint. Neither Opt-In Plaintiffs nor Putative Plaintiffs release their FLSA claims if they do not opt-in. (Ex. A Paragraph 13.) Finally, while the issues with respect to the regular rate may be undecided, FLSA Collective Action Members and Rule 23 California Class members are only agreeing to release any related claims through the date the proposed settlement agreement was executed. As such, this factor also approving the proposed settlement.

### 8. The Proposed Cost Of Settlement Administration Is Appropriate

The proposed settlement provided for an estimated payment of $15,000 to the Settlement Administrator, with any additional expenses paid by the Defendants. This anticipated cost represents less than 3% of the total gross settlement amount of $515,000.00. The proposed Settlement provides that if the costs of the Settlement Administrator were below this estimated amount, it shall revert to the Opt-In Plaintiffs on a pro-rata basis. (Ex. A Paragraph 1(f).) Further, the proposed agreement provides that if costs of the Settlement Administrator exceeds the proposed cost, Defendants shall bear the expense of these expenses and shall not be taken from the gross settlement amount. As set forth in the declaration the Settlement Administrator submitted in support of this motion, the Settlement Administrator will pay itself the initial $15,000 of the administration

expense from the Settlement Fund, and invoice the remaining costs to the Defendants. (Administrator Dec., ¶ 22.) Accordingly, this factor weighs in favor of approval of the proposed settlement.

### D.  The Proposed Settlement Distribution Is Fair And Reasonable

As described above, the proposed plan for distribution takes into account a variety of factors to ensure that the settlement allocation among members of the respective group is fair and accurate. To balance the goals of fairness and efficiency, the parties have agreed that the Plaintiffs' allocation of their group's FLSA settlement will be pro rata, i.e. based on the number overtime hours each individual worked beyond the statutory threshold and their receipt of Incentives during the respective claim period.

Because liability is premised on the allegation that the incentive payments should have resulted in an incremental increase in the regular rate for purposes of calculating and paying overtime, this allocation methodology fairly compensates each individual based on the number of overtime hours worked and the Incentives they received during the respective claim period. This method also ensures the risk of litigation with respect to the disputed legal issues as set forth above is borne equally among the recipients in each group while fairly acknowledging the individual employment circumstances of the recipient relative to the other members of their respective group. The portion of the respective settlement amounts allocated to the derivate state law claims will also be divided among the recipients on a pro-rata basis according to the number of weeks they worked above the statutory threshold during the respective claim period. This method is fair as well because each group incurred comparable damages[10] when they worked above the overtime threshold irrespective of the amount of the alleged underpayment during the workweek based on the disputed issues for these claims.

The difference between the gross recovery of the Opt-In Plaintiffs and the Putative Plaintiffs relates to their respective potential claims periods. Opt-In Plaintiffs had the benefit of being covered by a tolling agreement for approximately ten months prior the filing of the action

---

[10] Violation of California Labor Code §§204, 221-223 and 226 are not measured by the amount of wage damage for an initial violation.

1    and opted into the action soon after it was filed. When this action was filed, the only claims of

2    Putative Plaintiffs that were tolled were their state law claims. (*American Pipe and Construction*

3    *Co. v. Utah*, 414 U.S. 538 (1974).)  Putative Plaintiffs' statute limitations continued to run on their

4    claims under the FLSA even after the action was filed[11].  Their FLSA claims were not tolled until

5    October 2017 by agreement of the Parties. Therefore, an Opt-In Plaintiff's claim period under the

6    FLSA is 19 months longer than a Putative Plaintiff's, and is more valuable for the purposes of the

7    FLSA. Thus, the difference in gross recovery between the two groups accounts for the difference

8    in the legal value of their claims with respect to the statute of limitations.

9        Accordingly, this plan of distribution is fair, objective, and will reasonably approximate

10   the relative damages suffered by Collective Action and California Class members based on the

11   disputed legal issues, the factual issues affecting their potential individual damages, as well as the

12   respective statute of limitations applicable to their FLSA and state law claims.

13       **E.    The Class Received Adequate Notice**

14       The manner of giving notice and the content of the notice must "fairly apprise the

15   prospective members of the class of the terms of the proposed settlement and of the options that are

16   open to them in connection with the proceedings." (*7-Eleven Owners for Fair Franchising v.*

17   *Southland Corp*. (2001) 85 Cal.App.4th 1135, 1164.) Notice is appropriate if it has a "reasonable

18   chance of reaching a substantial percentage of the class members." (*Wershba*, *supra* 91 Cal.App.4th

19   at 251.) Here, the Court-approved notice adequately protected the due process rights of all class

20   members.

21       Rust Consulting successfully implemented the Court-approved notice plan, with only 24 of

22   the 438 packets sent being returned as undeliverable. This means approximately 94% of the class

23   received notice. This rate is on the high end of the norm for a notice's reach – i.e. the percentage

24   of class members who receive or are otherwise exposed to a notice, which normally ranges from

25

26

27   [11] "Unlike Rule 23 class actions, the filing of an FLSA complaint does not toll the statute of limitations. Instead, the statute of limitations continues to run on each plaintiff's claim until the plaintiff files his or her consent

28   to opt in to the action. 29 U.S.C. § 256." (*Brittmon v. Upreach, LLC* 285 F.Supp.3d 1033 (S.D. Ohio 2018).)

1    70-95% of the class. (*See* Federal Judicial Center, Managing Class Action Litigation: A Pocket

2    Guide for Judges Third Ed. (2010) at p. 27.)

3        The notice materials provided a brief, clear, and thorough explanation of the case, the terms

4    of the proposed settlement, the maximum amount Class Counsel could seek for attorney fees, the

5    amount Mr. Strong could receive as a service award, and the date, time, and place of the final

6    approval hearing, and the steps for class members to follow or opt out or object to the settlement.

7    The notice also described how to appear at the final hearing to object.

8        Additionally, as required by the Court's order granting preliminary approval of the

9    settlement, Class Counsel created and maintained a website, which provided the pleadings file,

10    information about the case, and up to date information about the date and time of the settlement

11    hearing. (Stevens Decl., ¶ 17.)

12        The notice plan was carefully tailored to reach a substantial percentage of class members

13    and fairly apprise them of the settlement. Given the high percentage of notices delivered, the plan

14    was a success. For the above reasons, the Court should find the notice was reasonable and satisfied

15    due process and the requirements of California law.

16        **E.    Settlement Class Members Have Acted Favorably**

17        A court may infer that a class action settlement is fair, adequate, and reasonable when few

18    class members object to it. (*Lealao v. Beneficial California, Inc.* (2000) 82 Cal.App.4th 19, 51.)

19    The Court may even approve a class action settlement despite a large number of objections. (*See,*

20    *e.g., Class Plaintiffs v. City of Seattle* (9th Cir. 1992) 955 F.2d 1268, 1291-96.) Settlement class

21    members were given a reasonable opportunity to object to the settlement. No objections were filed.

22    (Administrator Decl., ¶ 20.)  Moreover, the response rate to the settlement has been significant.  Of

23    the 438 packets mailed out, 177 claim forms were returned. (Administrator Decl., ¶¶ 15-18.) This

24    represents a response rate exceeding 40%. As such, the class members' reaction to the settlement

25    supports approving this settlement.

26    **V.    THE REQUESTED AWARD OF ATTORNEY FEES TO CLASS COUNSEL IS
       REASONABLE**

27        Class Counsel's request for attorney fees, costs, a class representative award, and claims

28    administration fees is fair, reasonable, and adequate, so the Court should grant it. Class Counsel

1  achieved an excellent settlement in this case, providing a substantial benefit to the class members.

2  No objections were received to the settlement or Class counsel's requests for fees, costs,

3  administrative fees, and an incentive award. (Administrator Decl., ¶ 20.)

4       Class Counsel seeks and order from this Court awarding attorney fees and costs; a class

5  representative incentive award; and costs of administrating the settlement.

6  **A.       Class Counsel's Requested Attorney Fees and Costs Should be Granted as Fair and Reasonable**

7       "Where a proposed settlement of FLSA claims includes the payment of attorney's fees, the

8  court must also assess the reasonableness of the fee award." (*Selk v. Pioneers Memorial*

9  *Healthcare Dist.*, 159 F.Supp.3d 1164, 1180 (2016); *see also* 29 U.S.C. § 216(b) (providing that,

10  in an FLSA action, the court shall "allow a reasonable attorney's fee to be paid by the defendant,

11  and costs of the action").) "Under Ninth Circuit law, the district court has discretion in common

12  fund cases to choose either the percentage-of-the-fund or the lodestar method for awarding

13  attorneys' fees." (*Vizcaino v. Microsoft Corp.*, 290 F.3d 1043, 1047 (9th Cir. 2002).) The Ninth

14  Circuit has generally set a 25% benchmark for the award of attorneys' fees in common fund cases.

15  (*Id.* at 1047-48; *see also In Re Bluetooth Headset Products Liability*, 654 F.3d 935, 942 (9th Cir.

16  2011).) The Ninth Circuit has approved the use of lodestar cross-checks as a way of determining

17  the reasonableness of a particular percentage recovery. (*Id.* at 1050.) Similarly, the California

18  Supreme Court has sanctioned the same method as a cross-check for resolving claims under state

19  law. (*Lafitte v. Robert Half. Intern. Co.,* 1 Cal.5th 480, 506 (2016).)

20       Pursuant to the proposed settlement, Class Counsel will be paid $125,000.00 in attorney

21  fees and costs. (Ex. A paragraph 1(e).) Any reduction of this proposed fee would revert to the Opt-

22  In Plaintiffs. Thus, the proposed attorney fee represents approximately only 23.3% of the

23  $515,000.00 gross settlement amount after subtracting costs. Therefore, this fee is presumptively

24  reasonable.

25       Further, calculation of the lodestar amount confirms the reasonableness of this award.

26  Prevailing parties are entitled to receive an award of fees for all hours reasonably expended at rates

27  in line with the "prevailing market rate of the relevant community." (*Carson v. Billings Police*

28

1  *Dept.,* 470 F.3d 889, 891 (9th Cir. 2006).) In *Bellinghausen v. Tractor Supply Co.* 306 F.R.D. 245

2  (N.D. Cal. 2015) the court concluded that rates of $650 for partners, $400 for senior associates and

3  $375 for junior associates were reasonable. (*Id.* at 264.) Here, the attorney fees and costs provided

4  by the proposed settlement are well below those that would be provided to a prevailing party in a

5  wage and hour action in the Northern District if the fee award was calculated based upon the hours

6  expended at the prevailing rates. The following hours were necessary and reasonably incurred in

7  the pursuit of Plaintiff's claims.

| NAME | TITLE | YEARS | HOURS | RATE | LODESTAR |
|------|-------|-------|-------|------|----------|
| David E. Mastagni, Esq.[12] | Partner | 18 | 34.2 | $600 | $20,520 |
| Isaac S. Stevens, Esq.[13] | Attorney, Sr. Associate | 10 | 82.8 | $400 | $33,120 |
| Ace T. Tate, Esq.[14] | Attorney, Associate | 9 | 442.1 | $375 | $165787.50 |
| Michael Lee | Forensic Accountant | | 145.74 | $250 | $36,435 |
| Toni L. Scannell[15] | Forensic Accountant | | 285.08 | $175 | $49,889 |
| Patrick R. Barbieri | Paralegal | 9 | 17.5 | $150 | $2,625 |
| **Total** | | | **695.95** | | **$308,376.50** |

16      Applying the rates for this type of litigation in the Northern District to just the three primary

17  attorneys yields a fee of $219,427.40, exclusive of support staff and accounting staff. Instead, Class

18  Counsel, will seek approval of a substantially reduced amount ($118,625.60) for all firm time

19  reasonably expended on this matter at the final approval hearing. This time does not include any

20  time expended by Class Counsel's in house accounting staff analyzing time and payroll records,

21  which is reflected above in the entries for Toni L. Scannell and Michael Lee. In light of the

22  percentage and the lodestar cross-check, the proposed attorney fee is most certainly reasonable.

23

24

---

[12] Declaration of David E. Mastagni Support of Plaintiff's Motion for Certification of Class and Collective Action and Class Representative; Appointment of Collective and Class Counsel; Final Approval of Settlement (Supp. Mastagni Decl., ¶ 7. (Submitted concurrently herewith).)

[13] Stevens Decl., ¶ 14.

[14] Declaration of Ace T. Tate in Support of Attorney Fees, ¶ 7. (Submitted concurrently herewith.)

[15] Declaration of Toni Scannel in Support of Plaintiff's Motion for Certification of Class and Collective Action and Class Representative; Appointment of Collective and Class Counsel; Final Approval of Settlement (Scannel Dec.), ¶ 5, 7.) (Submitted concurrently herewith.)

Additionally, Class Counsel incurred $6,374.40 in costs. Of the $6,374.40 incurred in this case, $4,777.50 was for the cost of mediating the case. The remainder of the costs incurred related to copy costs, postage, filing fees, travel, messenger service, and court call fees. This amount was reasonable, especially given the size of the class involved in the case.

## VI.   THE INCENTIVE AWARD TO PLAINTIFF STRONG IS REASONABLE

Under the proposed settlement agreement, $10,000 is to be awarded to Class Representative Ray Strong for his efforts in bringing this case.  Incentive awards are particularly appropriate in wage-and-hour actions where plaintiffs undertake a significant "reputational risk" by bringing suit against their employers. (*Rodriguez v. West Publishing Corp.* 563 F.3d 948, 958–59 (9th Cir. 2009).) A class representative must justify an incentive award through "evidence demonstrating the quality of plaintiff's representative service," such as "substantial efforts taken as class representative to justify the discrepancy between [his] award and those of the unnamed plaintiffs." (*Alberto v. GMRI, Inc.,* 252 F.R.D. 652, 669 (E.D.Cal.2008).) In the Northern District, $5,000 is presumptively reasonable. (*Bellinghausen, supra* at 266.) However, an award above this amount is appropriate when examining the time and effort expended by a class representative for the benefit of the class.

Class Representative Strong was instrumental in prosecuting this action and was an important source of information during the course of this litigation. He has been deeply involved in this case since its beginning. (See Strong Dec.)Class Representative Strong has devoted a substantial amount of time to helping Class Counsel effectively develop and prosecute this action at every stage of the litigation. (Strong Dec, ¶¶4, 6, 9, 10.) Plaintiff Strong provided documents and factual background to his counsel, frequently discussed these issues in preparation for filing a complaint, spoke with potential class members about their experiences working for Defendants, prepared for and attended the mediation in Sacramento. (*Ibid.*)  Plaintiff Strong's participation was an essential element that allowed Class Counsel to settle the Collective Action and California Class claims of approximately 270 individuals in a fair, adequate and reasonable manner. (Mastagni Dec. ¶25.) Moreover, Class Representative Strong made his name public by agreeing to pursue this lawsuit, thereby risking potential stigma. Class Representative Strong diligently, adequately, and

fairly represented the Collective Action and California class members, and has not placed his interests above any member thereof. As a result, the incentive award provided by the proposed settlement agreement should not prohibit this Court from granting preliminary approval.

## VII.  CY PRES AWARDEES

The proposed settlement agreement does not provide for any portion of the GSA to be given to a *cy pres* awardee.

## VIII.  CLASS ACTION FAIRNESS ACT

The proposed settlement agreement does not implicate any duties on the parties or this Court regarding the Class Action Fairness Act.

## IX.  CONCLUSION

For all of the foregoing reasons, Plaintiff respectfully asks the Court to certify this case as a collective action and a class action, and grant final approval of the parties' settlement.

Respectfully submitted,

Dated: March 21, 2019          **MASTAGNI HOLSTEDT, APC**

By: */s/ Isaac S. Stevens*
DAVID E. MASTAGNI
ISAAC S. STEVENS
Attorneys for Plaintiffs